**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| GS HOLISTIC, LLC,<br><br>Plaintiff<br>v.<br><br>DELAWARE TOBACCO & VAPE LLC d/b/a DELAWARE TOBACCO & VAPE and AHAID MOTAE MOTH AL HAFARY,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br><br>)<br>)<br>) | Civil Case No. 2:23-cv-03571-WHR-MRM |

**MOTION FOR DEFAULT FINAL JUDGMENT AGAINST BOTH DEFENDANTS**

Pursuant to Federal Rule 55(b)(2), the Plaintiff, GS HOLISTIC, LLC, moves this Court for entry of default judgment against the Defendants, DELAWARE TOBACCO & VAPE LLC d/b/a DELAWARE TOBACCO & VAPE and AHAID MOTAE MOTH AL HAFARY, in this action. The Defendants were served with the summons and Complaint but failed to file an answer or otherwise defend in this lawsuit. The Plaintiff now requests that this Court enter the attached proposed Default Judgment and Order for Other Equitable Relief, and Civil Money Penalties ("Default Judgment"). The Default Judgment award includes Statutory Damages of $150,000, and Costs in the amount of $958 to be imposed against the Defendants.

## I. PRELIMINARY STATEMENT

As a result of Defendants' failure to appear in this action and the subsequent entry of default against them, the material factual allegations set forth in the Plaintiff's Complaint must be accepted as true. Those allegations establish all of the necessary elements of the Plaintiff's claims for (i) willful trademark infringement of the Stündenglass trademarks in violation of 15 U.S.C. §§ 1114; (ii) trademark counterfeiting of the Stündenglass trademarks in violation of 15 U.S.C. §§ 1116(d);

and (iii) willful trademark infringement (false designation) in violation of 15 U.S.C. § 1125(a).

On the facts presented, it is also appropriate for the Court to grant the Plaintiff all relief requested in this motion, namely:

a. Statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c) in the amount of $150,000 ($50,000 per mark for each of the Plaintiff's three registered marks) and

b. Costs in the amount of $958.

In sum, the Plaintiff seeks an award of statutory damages for Defendants' offer for sale of a counterfeit good and willful conduct, injunctive relief, and an award of the Plaintiff's costs.

## II. STATEMENT OF FACT

### a. <u>The "STÜNDENGLASS" Trademarks and Plaintiff's Business.</u>

For approximately four years, the Plaintiff has worked to distinguish the Stündenglass brand as the premier manufacturer of gravity infusers by emphasizing the brand's unwavering use of quality materials and focusing on scientific principles which facilitate a superior smoking experience. Compl. ¶ 9. Stündenglass branded products embody a painstaking attention to detail, which is evident in many facets of authentic Stündenglass branded products. Compl. ¶ 9. It is precisely because of the unyielding quest for quality and unsurpassed innovation that Stündenglass branded products have a significant following and appreciation amongst consumers in the United States and internationally. Compl. ¶ 9.

As a result of the continuous and extensive use of the trademark "STÜNDENGLASS," GS sought registration with the United States Patent and Trademark office and was granted both valid and subsisting federal statutory and common law rights to the Stündenglass trademark. Compl. ¶ 10. Further, the Plaintiff has used the Stündenglass Marks in commerce throughout the United States, continuously, since 2020, in connection with the manufacturing of its infusers and

accessories. Compl. ¶ 13. The Stündenglass Marks are distinctive to both the consuming public and the Plaintiff's trade. GS's Stündenglass branded products are made using superior materials and are subject to quality controls in their manufacture and production. The superiority of Stündenglass branded products is not only readily apparent to consumers, but to industry professionals as well. Compl. ¶ 14.

The Stündenglass Trademarks are exclusive to GS and appear clearly on GS's Stündenglass Products, as well as on packaging and advertisements related to the products. Compl. ¶ 15. GS has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting and protecting these Trademarks. Compl. ¶ 15. As a result, products bearing GS's Stündenglass Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from GS. Compl. ¶ 15.

GS's Stündenglass Products have become some of the most popular of their kind in the world and have also been the subject of extensive unsolicited publicity resulting from their high-quality and innovative designs. Compl. ¶ 16. Because of GS's efforts, the Stündenglass brand, and GS's Stündenglass Trademarks are famous throughout the United States. Compl. ¶ 16.

Since 2020, GS has worked to build significant goodwill in the Stündenglass brand in the United States. GS has spent substantial time, money, and effort in developing consumer recognition and awareness of the Stündenglass brand, via point of purchase materials, displays, through their websites, attending industry trade shows, and through social media promotion. Compl. ¶ 17. In fact, Stündenglass Products have been praised and recognized by numerous online publications, as well as publications directed to the general public. Compl. ¶ 17-18.

At the time of this Complaint, the Plaintiff was the owner of three federally registered Stündenglass and common law trademarks:

a. U.S. Trademark Registration Number 6,633,884 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 011.

b. U.S. Trademark Registration Number 6,174,292 for the design plus words mark "S" and its logo in association with goods further identified in the registration in international class 034.

c. U.S. Trademark Registration Number 6,174,291 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 034.

The Counterfeit Product sold by the Defendants in the instant action displayed each of the above listed Stündenglass Marks in violation of federal statute and the Plaintiff's rights causing damage to the Plaintiff's brand by association and giving rise to this action. Compl. ¶ 29.

b. <u>The Stündenglass marks are a Counterfeiting Target.</u>

GS sells its products under the Stündenglass Marks to authorized stores in the United States, including in Ohio. GS has authorized approximately 3,000 stores in the United States to sell its products. As such, Stündenglass branded products reach a vast array of consumers throughout the country. Compl. ¶ 19.

It is because of the recognized quality and innovation associated with the Stündenglass Marks that consumers are willing to pay higher prices for genuine Stündenglass products. For example, a Stündenglass brand infuser is priced at $599.95, while a non-Stündenglass branded product is also being sold for up to $600, with a range of $199 to $600. Compl. ¶ 20.

c. <u>Defendants' Infringing Conduct and Failure to Litigate.</u>

The Defendants have engaged in continuous and systematic business in Ohio and derive substantial revenue from commercial activities in Ohio. Specifically, the Defendants have engaged in the unlawful manufacture, retail sale, and/or wholesale sales of counterfeit Stündenglass branded infusers and related parts. Compl. ¶ 6.

The Defendants have sold goods bearing Trademarks registered to the Plaintiff. Compl. ¶ 25-26. The Defendants' acts constitute willful trademark infringement where they have failed to deny they knew the product they sold was a counterfeit and have failed entirely to appear for this litigation. *Id.* at ¶ 43. The Defendants' infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Counterfeit Goods sold by the Defendants because they are the same marks and are not alleged to belong to any other source or origin than the Plaintiff. *Id.* at ¶ 42-43.

The Defendants have failed to respond to the Complaint or otherwise appear in this action completely preventing discovery of important evidence such as actual sales, wholesaler source information, or evidence relevant to state of mind.

## III. LEGAL STANDARDS

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter a default judgment following entry of default by the Clerk of the Court, against properly served Defendants who fail to file a timely responsive pleading. Fed. R. Civ. P. 55(b); *Heard v. Caruso*, 351 Fed.App'x. 1, 15-16 (6th Cir. 2009); *Shepard Claims Serv., Inc. v. William Darrah & Assoc*., 796 F.2d 190, 193 (6th Cir. 1986) ("entry of default is just the first procedural step … to obtaining a default judgment").

## IV. ARGUMENT

A. <u>A Default Judgment Should Be Awarded Against the Defendants</u>.

The Plaintiff has fulfilled its obligations under Fed. R. Civ. P. 55(a) with respect to the entry of default by the Clerk of the Court. The entry of default was proper. As shown in the record of this matter, the Plaintiff served the Defendants, DELAWARE TOBACCO & VAPE LLC d/b/a DELAWARE TOBACCO & VAPE and AHAID MOTAE MOTH AL HAFARY, January 24, 2024, [DE 8, 8-1]. Because the Defendant did not file a response to the Complaint, the Clerk of

this Court correctly entered an Entry of Default as to Defendant DELAWARE TOBACCO & VAPE LLC d/b/a DELAWARE TOBACCO & VAPE and AHAID MOTAE MOTH AL HAFARY on April 4, 2024 [DE 11]. As such, the procedural requirements for Default Judgment have been met.

B. The Plaintiff's Complaint is Sufficient for the Judgment.

The merits of GS's case and the sufficiency of GS's Complaint warrant the entry of default judgment against the Defendants.

Once default is entered against a defendant, that party is deemed to have admitted all of the well-pleaded allegations in the complaint, except those related to damages. B*oost Worldwide, Inc. v. Cell Station Wireless, Inc*., No. 2:13-cv-490, 2014 U.S. Dist. LEXIS 1467, at *3-4 (S.D. Ohio Jan. 7, 2014) (citing *Antoine v. Atlas Turner, Inc*., 66 F.3d 105, 110-11 (6th Cir. 1995)). Nevertheless, a court deciding whether to grant a motion for a default judgment must still satisfy itself that the facts in the complaint state a claim for relief against the defendant. *Kuhlman v. McDonnell*, No. 1:20-cv-510, 2022 U.S. Dist. LEXIS 23846, at *4 (S.D. Ohio Feb. 10, 2022) The Court must exercise "sound judicial discretion" when determining whether to enter default judgment. *State Farm Bank, F.S.B. v. Sloan,* No. 11-cv-10385, 2011 U.S. Dist. LEXIS 57652, at *4 (E.D. Mich. May 31, 2011).

**1. Trademark Infringement (15 U.S.C §1114)**

To prevail on a trademark infringement claim under 15 U.S.C. § 1114, a Plaintiff must prove that a Defendant used, without the consent of the registrant, "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To establish liability for infringement of a federally registered trademark in violation of the Lanham Act, a party must show that: (1) it

owns a trademark, (2) the infringer used the mark in commerce without authorization, and (3) the use of the alleged infringing trademark "is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Cardinal Servs., v. Cardinal Staffing Sols.*, Inc., No. 2:19-cv-1743, 2019 U.S. Dist. LEXIS 208873, at *4 (S.D. Ohio Dec. 4, 2019) (quoting *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013)). The Plaintiff, GS HOLISTIC, has established each of these elements.

Regarding the first element, registered trademarks are entitled to a presumption of ownership and validity. *See* 15 U.S.C. § 1057(b) ("A certificate of registration of a mark . . . shall be prima facie evidence of the validity of the registered mark . . ."). Here, the Plaintiff is the owner of its three Stündenglass Trademarks, and they are exclusive to the Plaintiff. CompI. at ¶ 10. The Stündenglass Marks are registered with the United States Patent and Trademark Office (the "USPTO"). Trademark registration certificates are attached as Exhibit "A." Federal registration of a trademark is prima facie evidence of the mark's validity and of the registrant's exclusive ownership of and right to use the mark. 15 U.S.C. § 1057(b). Therefore, GS has satisfied the first element of demonstrating ownership of three valid marks entitled to the protection of the law.

Regarding the second element, Defendants' use of counterfeit Stündenglass Marks in commerce is blatant and obvious. The pictures of infringing product purchased from the Defendant store are attached as Exhibit "B." The Defendants do not have, nor have they apparently attempted to obtain consent from the Plaintiff to sell products bearing Stündenglass marks. *See* Folkerts Decl. as to Damages. Instead, the Defendants intentionally traded on the goodwill of the Stündenglass' Marks, free riding on its reputation for profit, causing deception in the marketplace, and diverting sales of the Plaintiff's infusers unfairly to these Defendants.

The Defendants further have sold in commerce Counterfeit Goods using reproductions,

counterfeits, copies and/or colorable imitations of Stündenglass Marks. In fact, the Defendants did sell an infuser with three (3) fake Stündenglass Marks, which is in fact a counterfeit product. *See* Exhibit B. Moreover, the Defendants sold this counterfeit product without authorization or permission from the Plaintiff. The infuser, which donned the Plaintiff's Trademarks, was sold for a profit in the ordinary stream of commerce. *Id*. The Defendants' use of the Stündenglass Marks includes importing, advertising, displaying, distributing, selling, and/or offering for sale unauthorized and illegitimate copies of Stündenglass branded products. *Id.*

Regarding the third element, courts in the Sixth Circuit have recognized that when the defendant's business involves use of counterfeit imitation marks (like in this matter), likelihood of confusion is presumed and a multi-factored balancing analysis concerning the likelihood of confusion is unnecessary. See e.g., *Gen. Motors Corp. v. Autovation Technologies, Inc*., 317 F.Supp.2d 756, 761 (E.D. Mich. 2004) (the Sixth Circuit has noted "a likelihood of confusion is presumed when a defendant intentionally copies a trademark design with the intent to derive a benefit from the reputation of another.") (internal quotation marks and citation omitted).

The Defendants used counterfeit marks that are identical to the GS's registered Stündenglass Marks. The use of these counterfeit marks is likely to cause confusion, mistake, or deception of consumers who believed Defendant's Counterfeit Goods were genuine or authorized Stündenglass products. *See* Exhibit B.

In addition, "[a]n individual, including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, or who personally participates in that activity is personally liable for the infringement." *Brand Ventures, Inc, v. TAC5, LLC*, 2018 WL 2011112 at 2 (M.D. Fla.2018) (quoting S. *Bell Tel & Tel. v. Assoc. Tel. Dir. Publishers*, 756 F.2d 801, 811 (11th Cir. 1985)). Such an individual can be liable regardless of whether the corporate

veil is pierced. See *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994) ("[A] corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil."). Therefore, as here, Defendant, AHAID MOTAE MOTH AL HAFARY, as owner of the Defendant store and a corporate officer with financial interest and personally participates in, approves, or controls product acquisition for the Defendant store.

Further, given the Defendants' default, the Defendants admit GS's well-pleaded allegations of consumer confusion. Although the likelihood of confusion is presumed, the Plaintiff's Complaint also establishes the factors considered for likelihood of confusion by the Sixth Circuit. In determining whether a likelihood of confusion exists, courts consider the following non-exhaustive list of factors: "(1) strength of plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing of channels used; (6) degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion in of the product lines using the marks." *Lollard Tobacco Co. V. Amouri's Grand Foods, Inc*., 453 F.3d 377, 381 (6th Cir. 2006). (citations omitted).

No single factor is dispositive and a finding of a likelihood of confusion does not require a positive finding on a majority of these factors. *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc*., 730 F.3d 494, 509 (6th Cir. 2013). "[A] plaintiff need not show that all, or even most, of the factors listed are present in any particular case to be successful. *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988). "The general concept underlying likelihood of confusion is that the public believe that the mark's owner sponsored or otherwise approved of the use of the trademark." *Carson v. Here's Johnny Portable Toilets, Inc*., 698 F.2d 831, 834 (6th Cir. 1983).

First, as a result of their failure to answer the Plaintiff's Complaint, the Defendants deem

admitted all the statements in the Complaint regarding the strength of the Stündenglass Marks. Moreover, they have been examined by the United States Patent and Trademark Office ("USPTO") and deemed to be distinctive for the Plaintiff's goods.

Second, the similarity of the marks and products at issue strongly support finding a likelihood of confusion where the marks are objectively identical. See *Champions Golf Club, Inc. v. Champions Golf Club, Inc*., 78 F.3d 1111, 1116 (6th Cir. 1996) ("Similarity of marks is a factor of considerable weight."). *See also* Exhibit B. Moreover, the Counterfeit Goods and the Plaintiff's products are identical, both are infusers of the same shape size and visually appear to be of the same construction and appear to be offered for the same functional uses. *Id*.

Further, the Defendants sell Counterfeit Goods through the same retail channels as genuine Stündenglass Products and the Defendants sell to the same prospective consumers as GS. It is recognized by the Courts that customers exercise a lower degree of care for inexpensive goods. *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr*., 109 F.3d 275 at 286 (6th Cir. 1997). Here, the infusers were relatively inexpensive for customers to exercise a great deal of care. If the Court finds that the infusers' value is sufficient to cause scrutiny, the Plaintiff prays the Court also consider that even if scrutiny were heavily applied, it wouldn't stop consumers from being duped given the degree of similarity and extend of effort expended to make consumers think the product is legitimate, regardless of the price of the product or scrutiny applied.

Although actual confusion is considered as a factor, the Defendants' use of identical marks supports finding confusion. *Audi AG v. D'Amato*, 469 F.3d at 543 (6th Cir. 2006) "([T]he absence of actual confusion evidence is inconsequential."). The Plaintiff also meets the final factor where it sells its products nationally in both brick-and-mortar smoke shops and other outlet types across the country. It essentially already occupies this market sector and would occupy this store if it had

been peddling legitimate instead of fake product. Therefore, the Plaintiff contends there is a likelihood of expansion of its product lines since the Defendants' goods are identical to GS's products and GS already occupies a national portion of the market with both overlapping and exceeding scope. The counterfeit here was not offered to compete with GS's legitimate business.

**2. False Designation of Origin and Unfair Competition (15 U.S.C. §1125(a))**

Under 15 U.S.C. § 1125(a) ("Section 1125(a)"), any person who uses in commerce "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" in a manner likely to cause confusion, mistake, or deception as to the "affiliation, connection, or association" of that person or "as to the origin, sponsorship, or approval" of that person's goods or services by another person is liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a)(1)(A).

Similarly to Section 1114, to establish liability for unfair competition, a plaintiff must show: "(1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Topnotch Innovations, LLC v. Dean*, No. 2:20-cv-1384, 2020 U.S. Dist. LEXIS 194772, at *5 (S.D. Ohio July 28, 2020). The Sixth Circuit has held that claims brought under Sections 1114 and 1125(a) have the same elements. *Audi AG v. D'Amato*, 469 F.3d at 542 (under the Lanham Act, the Sixth Circuit "use[s] the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin: the likelihood of confusion between the two marks.") (citing *Two Pesos v. Taco Cabana*, 505 U.S. 763, 780, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992)).

Accordingly, the Defendants' acts, as described above, constitute false designation of

origin and unfair competition. Given the Defendants' default, the Defendants deemed admitted the allegations in the Complaint, and therefore, the Plaintiff has established its claim for false designation of origin and unfair competition.

C. Plaintiff Should be Awarded Statutory Damages

The Defendants' acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114. Moreover, these acts also constitute false designation of origin pursuant to 15 U.S.C. § 1125(a) in that the Defendants' application of the Plaintiff's marks are likely to cause confusion and mistake or deceive consumers as to the source or origin of such goods, or sponsorship or approval of such goods by the Plaintiff. The Lanham Act affords appropriate remedy for such violations in the form of statutory damages which the Plaintiff elects.

The Lanham Act allows a plaintiff to elect statutory damages instead of actual damages because evidence thereof is so burdensome to obtain by plaintiffs and lies primarily with defendants. *See*. S. Rep. No. 104-777, p. 10 (1995); *see* 15 U.S.C. § 1117(c). The Lanham Act provides for an award of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just..." 15 U.S.C. § 1117(c)(1). Where willfulness is demonstrated, however, a maximum award of $2,000,000 per counterfeit mark per type of good sold, offered for sale, or distributed, may be awarded. 15 U.S.C. § 1117(c)(2). *See also* H.R. REP. NO. 110-617, at 24–25 (2008) (highlighting the purposes of the statute and why amendments were needed to further the statute's goals of deterrence increasing the statutory damages range – minimum and maximum each - by double).

A plaintiff who proves a violation of a registered trademark is entitled to recover its profits and any damages sustained. 15 U.S.C. § 1117(a). However, "in a case involving use of a counterfeit mark . . . the court shall, unless the court finds extenuating circumstances, enter

judgment for three times such profits or damages, whichever amount is greater. . ..” 15 U.S.C. § 1117(b). Several courts have found “statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed." *Coach, Inc. v. Cellular Planet,* No. 2:09-cv-00241, 2010 U.S. Dist. LEXIS 62033, at *2 (S.D. Ohio June 22, 2010); *Microsoft Corp. v. McGee*, 490 F.Supp.2d 874, 882 (S.D. Ohio 2007). In setting an appropriate statutory damages amount, the Court has wide discretion. *Microsoft Corp. v. Compusource Distributors, Inc.,* 115 F.Supp.2d 800, 811-12 (E.D. Mich. 2000).

Because the Defendants have refused to engage, as indicated through their failure to obtain counsel, litigate or appear in any capacity in this civil litigation, it is not possible for the Plaintiff to conduct discovery which would expose receipts, invoices, ledgers, etc. to establish volume of sales, profits, and therefore compensatory damages with greater certainty – which again is a supported reason for electing statutory damages and why they exist. While the Defendants may not have sold millions of counterfeit products, they have demonstrably engaged in the purchase and sale of counterfeits of at least one unit, and likely traded in more, though that volume cannot be determined without further discovery and participation by the Defendants in this lawsuit. *See* Exhibit B. It is, however, known that retailers of similar size and disposition selling similar goods have also sold counterfeits in various states throughout the country including in Ohio, leading the Plaintiff to believe that such sales likely occur with some regularity and occur through similar trade avenues and distributors - though again those are indeterminate given no discovery can be conducted. *See* Folkerts Decl. as to Value of Damages; *see also* Folkerts Decl. as to Damages. Notably in establishing these statutory damages for trademark counterfeiting, Congress reported that "the creation of this alternative to the more traditional damage remedies. . . reflected a harsh reality -- counterfeiters often do not keep or secrete records of their unlawful activities, thus making

proof of. . . the counterfeiters' profits impossible as a practical matter." S. Rep. No. 104-777, p. 10 (1995). Statutory damages are most appropriate where there is little or no evidence of a counterfeiters' profits. *Sara Lee Corp*., 36 F. Supp. 2d at 165; see also *Cable/Home Communication Corp. v. Network Prods., Inc*., 902 F.2d 829, 850 (11th Cir. 1990). Here, the Defendants' non-disclosure of sales records leaves actual damages uncertain, and similarly it would be improper for this Court to assume that only a single counterfeit product bearing the Plaintiff's Mark has ever been sold. *See* Exhibit D.

Alternatively, an assessment of damages has been completed by Plaintiff, GS HOLISTIC, LLC. *See* Folkerts Decl. as to Value of Damages; *see also* Folkerts Decl. as to Damages. GS HOLISTIC, LLC Owner and CEO, Chris Folkerts, states that the Plaintiff is seeking only a fraction of the actual losses to its business and that damages of $150,000.00 are reasonable since the actual damages to the business are measured at millions in excess of this amount. Folkerts Decl. as to Value of Damages ¶¶ 10-14.

Further supporting a high damages award, the amount of statutory damages provided by the statute is greater where the infringement is willful. Here, due to the default, the Defendants deem admitted the allegations of willfulness in the Plaintiff's Complaint. "A court may infer that a defendant's infringement is willful from the defendant's failure to defend." *Coach, Inc. v. Cellular Planet*, 2010 U.S. Dist. LEXIS 62033, *6 (S.D. Ohio June 22, 2010); *Microsoft Corp. v. McGee*, 490 F.Supp.2d at 880 (S.D. Ohio May 7, 2007). *North Atlantic Operating Company, Inc. v. JingJng Juang*, no. 15-14013-TBG [DKT. 276], at *6 (E.D. Mich. |May 9, 2017); *BBK Tobacco & Foods LLP v. AAA Traders Inc. et al*, Case No. 2:19-cv-11973-AJT-RSW (E.D. Mich. 2020). Moreover, courts find that willfulness under 15 U.S.C. § 1117(c) includes knowingly, intentional, willfully blind, or reckless acts. *See Lorillard Tobacco Co. v. Yazan's Serv. Plaza, Inc*., 2007 U.S. Dist.

LEXIS 45612, *16 (E.D. Mic. June 25, 2007); *Wildlife Express Corp. v. Carol Wright Sales, Inc*., 18 F.3d 502, 511 (7th Cir. 1994)(it is "[w]illful infringement … where he showed a reckless disregard for the owner's rights."). *H-D U.S.A., LLC v. Sunfrog, LLC,* 311 F. Supp. 3d 1000 (E.D. Wis. 2018) (Describing "ostrich-like" business tactics as constituting willful blindness and extensively analyzing the *Tiffany* innocence defense as relevant only when the Defendant actually shows up to court with a "bended knee" as opposed to ignoring the lawsuit as a nuisance.)

Here, the Defendants have at least acted with willful blindness to the Plaintiff's rights. The Defendants are not authorized dealers of Stündenglass products. The Defendants are merchants in the business of selling tobacco products including infusers and thus as a merchant in goods of the kind would have knowledge of the recognition and notoriety of the Stündenglass brand and trademark in the smoking products market. The fact that Defendants did not purchase the products from GS Holistic provides evidence that Defendants should have at least briefly inquired as to the products' authenticity as merchants under the Uniform Commercial Code warrant that goods they sell are not infringing. The Defendants could have inquired with GS as to legitimacy by phone or email or similarly the Defendants could have reviewed the Plaintiff's website which generally pictures its products, contains an FAQ tab addressing counterfeits, and contains an authorized retailer search. Nevertheless, the Defendants failed to do so despite the relative ease of doing so, recklessly disregarding the Plaintiff's rights, which supports willful infringement.

Statutory damages do not only compensate for injuries sustained but also redress immeasurable damage to consumer goodwill and act as a deterrent to discourage future wrongful conduct. *See Ford Motor Co. v. Cross*, 441 F.Supp.2d 837, 852-53 (E.D. Mich. 2006).

Based on the blatant disregard by the Defendants of this case, this Court, and the Plaintiff's rights, the damages assessment of $150,000.00 ($50,000 per Mark) is appropriate and well within

the discretion of the Court to award. *See*. 15 U.S.C. § 1117(c); *see also* H.R. REP. NO. 110-617, at 25 (2008); *see also* Prioritizing Resources and Organization for Intellectual Property Act of 2008, H.R. 4279, 110th Cong. §§ 104–05 (2008). This amount not only reflects actual damages suffered by the Plaintiff but attempts to compensate for immeasurable goodwill lost with consumers and damage to reputation, and further will serve a strong deterrent purpose. *Id*.

Furthermore, the statutory-damages award of $150,000 is in line with other statutory-damages awards made in Stündenglass cases, in various districts. Attached hereto and marked Exhibit "C" is a list of fifty-seven other awards of at least or in excess of 150,000 received by the Plaintiff across five states, Illinois, California, Texas, Wisconsin, and Florida. *See* Exhibit C.

Moreover, GS believes that a $50,000 award per mark for statutory-damages is in line with other statutory-damages awards determined by the courts in the Sixth Circuit in other similar counterfeit sales actions. *See JUUL Labs, Inc. v. FLI High*, LLC, 2021 U.S. Dist. LEXIS 154240, *2 (N.D. Ohio Aug. 17, 2021)(awarding $150,000 statutory damages for three JUUL marks); *BBK Tobacco & Foods LLP v. AAA Traders Inc*. et al, Case No. 2:19-cv-11973-AJT-RSW (E.D. Mich. July 23, 2020)(awarding $50,000 per trademark); *Luxottica Grp., S.p.A. v. 111 Pit Stop, Inc*., 2020 U.S. Dist. LEXIS 132462, *22 (M.D. Tenn. July 27, 2020)(awarding $100,000 per type of counterfeit mark per type of counterfeit good, for a total award of $1,000,000.); *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 882 (S.D. Ohio June 22, 2010)(awarding plaintiff Microsoft $100,000 in statutory damages per trademark, for a total of $710,000 in statutory damages); *Microsoft Corp. v. Compusource Distributors, Inc.,* 115 F. Supp. 2d 800 (E.D. Mich. 2000) (awarding $**50,000** for each registered trademark in statutory damages); *Coach, Inc. v. Source II, Inc*., Case No. 15-10740 (E.D. Mich. Feb. 1, 2017) (awarding statutory damages of $300,000.); *North Atlantic Operating Company, Inc., and National Tobacco Company, L.P. v. JingJing Juang*,

No. 15-14013-TBG [DKT. 276], at *6 (E.D. Mich. May 9, 2017) (awarding $**200,000** per "group of defendants" in statutory damages on Default Judgment).

The Sixth Circuit is not alone in granting high statutory damages in awards of default judgment, the Fifth, Second, Seventh and Eleventh – at least - have as well. *Mighty Mug,* No. 1:22-cv-00100-RP at *16; *He GangPeng*, No. 21-40166; *Chickadee Bus. Sols., LLC*, No. 6:19-CV-406-JCB, 2021 WL 6333033; See *Rovio,* No. 5:13-CV-1079-XR, 2016 WL 4126657, at *6.

Second Circuit cases include *Sara Lee Corp. v. Bags of New York, Inc.,* 36 F. Supp. 2d 161 (S.D.N.Y. 1999) (awarding $**750,000** in statutory damages). *Gucci America, Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117 (S.D.N.Y. 2008) (awarding $**3,000,000** in statutory damages citing *Malletier v. WhenU.com, Inc*., no. 05 Civ. 125 (LAK), 2007 WL 257717, at 4* (S.D.N.Y. Jan. 26, 2007) and other cases describing default as willful: "when a defendant has defaulted, then by virtue of its default it is deemed to be a willful infringer."); *Nike, Inc. v. Top Brand Company LTD*, No. 00CV 8179 (KMW)(RLE)(S.D.N.Y. Oct. 6, 2006)(awarding $**17,000,000** in statutory damages).

Some Seventh Circuit cases include *H-D U.S.A.,* 311 F.Supp.3d 1000 (awarding $**19,200,000** in statutory damages finding willful blindness and disregard for the judicial process); See also *Lorillard Tobacco Co. v. Montrose Wholesale Candies and Sundries, Inc*., No. 03-cv-5311, 2007 WL 2580491 (N.D. Ill., Sept. 10, 2007) (awarding $**2,500,000** in statutory damages; this Court noted the prejudices of not participating in discovery on a default judgment); *Monster Energy Co. v. Jing*, No. 15-cv-277, 2015 WL 4081288 (N.D. Ill. July 6, 2015); see also *Monster Energy Co. v. Wensheng*, No. 15-cv-4166 (N.D. Ill. June 30, 2016) (awarding $**2,000,000** in statutory damages); *NBA Properties, Inc. v. Yan Zhou, et al*., No. 16-cv-11117, 2017 WL 4074020 (N.D. Ill., Sept. 14, 2017) (awarding $**50,000** per mark totaling $**1,300,000** in statutory damages).

Some Ninth Circuit cases include *JUUL Labs, Inc. v. Chou*, 557 F. Supp. 3d 1041 (C.D.

Cal. 2021) (awarding statutory damages of **$1,000,000** per defendant;). *Ul LLC v. Space Chariot Inc*., 250 F. Supp. 3d 596 (C.D. Cal. 2017) (awarding statutory damages of $**1,000,000** finding that $2,000,000 would be a windfall). *Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119 (C.D. Cal. 2007) (awarding $**2,000,000** in statutory damages against a brick-and-mortar shop).

Some Eleventh Circuit cases include *Delta Airlines, Inc. v. John Wunder et. al.*, No. 1:13 CV 3388 (MHC) (N.D. Ga. 2015) (awarding $**22,328,052.10** on an order for Default Judgment; cited in the *JUUL Labs, Inc. v. Chou* court's final order on damages). *Microsoft Corp. v. Tierra Computer, Inc*., 184 F. Supp. 2d 1329 (N.D. Ga. 2001) (awarding $**100,000** per mark for a total of $**1,450,000** in statutory damages for non-willful use of counterfeit marks); *Apple Corps Ltd.* No. 19-cv-62853-BLOOM/Valle (finding that $**1,000,000** per defendant on default final judgment).

D. Plaintiff is Entitled to Costs of Litigation

Pursuant to 15 U.S.C. § 1117, the Plaintiff is entitled to recover the costs of the action. See 15 U.S.C. § 1117. The Plaintiff requests that this Court award costs in the total amount of $958 consisting of the filing fee ($402.00), the process server fee ($190), and Plaintiff's investigation fees ($366). See Decl. Supp. Final Default J. ¶ 6.

E. Plaintiff is Entitled to Injunctive Relief

By the reasons explained in Plaintiff's Complaint and pursuant to 15 U.S.C. § 1116, the Plaintiff is entitled to injunctive relief. The Plaintiff requests that this Court enter an order which permanently enjoins DELAWARE TOBACCO & VAPE LLC d/b/a DELAWARE TOBACCO & VAPE and AHAID MOTAE MOTH AL HAFARY, and their agents, employees, officers, directors, owners, representatives, successor companies, related companies, and all persons acting in concert or participation with it from:

(a) Import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment, licensing,

development, display, delivery, marketing advertising or promotion of the counterfeit Stündenglass product identified in the complaint and any other unauthorized Stündenglass product meaning products bearing the Stündenglass trademarks (U.S. Trademark Registration Numbers 6,633,884; 6,174,292; and 6,174,291), counterfeits, copies or colorful imitations thereof;

F. Plaintiff is Entitled to Destruction of Infringing Products

Pursuant to 15 U.S.C. §1118, the Plaintiff requests that this Court grant an order requiring the Defendants, at their cost, deliver to the Plaintiff for destruction all products, accessories, labels, signs, prints, packages, wrappers, receptacles, advertisements, and other material in their possession, custody or control bearing any of the Stündenglass Marks.

## V. ORAL ARGUMENT REQUESTED

The Plaintiff, GS Holistic, LLC, respectfully requests oral argument on this motion. Chinese counterfeiting of products, like those manufactured by the Plaintiff, is rampant throughout the country, particularly in the Midwest, home to American manufacturing. The Plaintiff has suffered greatly from the flood of counterfeit products into the marketplace to such an extent that nearly one in three of the Plaintiff's products sold at stores are counterfeit. GS Holistic has sued and obtained millions of dollars from foreign importers and distributors. However, those actions had no impact on the flood of counterfeits into the marketplace.

As such, there is a need for a strong deterrence around the country, particularly in Ohio, as counterfeiting is threatening to literally destroy the Plaintiff's company. The only way to effectively stop this flood of counterfeit products onto store shelves is to bring actions against the retailers themselves and present a strong deterrence to other potential infringers.

## VI. CONCLUSION

Given the foregoing, this Court should grant Plaintiffs' motion in its entirety.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 29, 2024, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF to serve on all counsel of record.

*/s/ John D. Hoffman, Jr.*

John D. Hoffman, Jr.
OH Bar No. 0099803
John Hoffman Law Office LLC
137 Heritage Woods Dr.
Suite 210
Akron, OH 44321
john@jdh-law.com
Serv609@LegalBrains.com
Telephone: 561-232-2222
*Attorney for the Plaintiff*